Henry Thomas CANE, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

May 27, 1977.

Rehearing Denied July 29, 1977.

Discretionary Review Denied Nov. 14, 1977.

904

Robert F. Stephens, Atty. Gen., Raymond M. Larson, Asst. Atty. Gen., Frankfort, for appellee.

Jack Emory Farley, Public Defender, Kevin M. McNally, Asst. Public Defender, Frankfort, for appellant.

Before GANT, LESTER and PARK, JJ.

PARK, Judge.

Henry Thomas Cane appeals from a judgment of conviction entered by the Franklin Circuit Court following his jury trial on the charge of first degree robbery. A brief summary of the evidence is necessary for an understanding of the grounds for reversal raised by Cane on this appeal.

On December 19, 1975, three black persons robbed the Brown's Clothing Store in downtown Frankfort. During the course of the robbery, two female store employees and a female customer were threatened

with a knife. Money and a substantial quantity of clothing were taken from the store during the course of the robbery. Shortly after the robbery, an automobile driven by Cane was stopped on the outskirts of Frankfort by the city police. The clothing taken from the Brown's Clothing Store during the robbery was found on the backseat of the car. Cane and another occupant of the car, Glenn Duncan, were arrested. A third occupant of the car slipped away in the confusion and was not apprehended.

The robbery in question was unusual because of the attire of the three persons who carried out the robbery of Brown's Clothing Store. All three robbers were attired in women's clothing. At all times during the course of the robbery, the two store employees and the one customer believed the assailants to be women. When the car with the stolen property was stopped by the police, all three occupants were attired in women's clothing. The arresting officer believed both Cane and Duncan to be women, and their true gender was not discovered until they were booked at the police station.

Both Cane and Duncan gave their occupations as "female imitator." Duncan entered a plea of guilty, and at Cane's trial Duncan testified that he and two other "female imitators" robbed the clothing store. Not having an automobile with which to transport the loot from the robbery back to Louisville, Duncan testified that he and the other two robbers telephoned Cane for a ride. According to Cane and Duncan, Cane innocently picked up the three robbers and their loot only to let one of the robbers out of the car shortly before Cane was stopped by the police. Consequently, there were two rather than three persons with Cane in the car.

The primary allegations of error relate to the identification of Cane as one of the three robbers. Other than the fact that Cane was arrested operating the automobile carrying the stolen merchandise, the only evidence linking Cane to the robbery was the testimony of Mrs. Opal Oliver, one of the two clerks at the store. Mrs. Oliver conceded that she had been unable to identify Cane at the examining trial in quarterly court. However, she attributed her inability to identify Cane to her distance from him. According to Mrs. Oliver, as she was preparing to leave court she had a closer view of Cane and was able to identify him as one of the three robbers. She further testified that she picked out Cane's photograph and Duncan's photograph from a book of mug-shots the morning of the trial. She also identified Cane in court during the course of the trial.

The photographs of Cane and Duncan were taken by the Frankfort police immediately following their arrest. Both Cane and Duncan were shown in the women's clothing and wigs in which they were dressed at the time of their arrest. Before the two photographs were introduced at trial, the bottom of the photographs had been cut off so as to delete identification plates which were suspended around the necks of Cane and Duncan. However, the chains which held the identification plates were still visible, and any juror of ordinary intelligence would have recognized that the photographs had been taken by the police.

■ Cane asserts that it was error to introduce the photograph taken of him at the time of his arrest. Cane claims that the Commonwealth was able to introduce improper evidence of past criminal conduct by means of the mug-shot. This contention is without merit. The photograph in question was not introduced for the purpose of showing past criminality. The photograph was offered solely for identification purposes. As Cane was disguised as a woman at the time of his arrest, the photograph represented the best evidence of his appearance at the time of the commission of the crime. We hold that the photograph was properly admissible for purposes of identification. *Urbanski v. Commonwealth*, Ky., 526 S.W.2d 7 (1975); *Matters v. Commonwealth*, Ky., 245 S.W.2d 913 (1952); Annotation 30 *A.L.R.3d* 908, 911–14 (1970). This

is not a situation in which a mug-shot is introduced solely for the purpose of branding the defendant as a criminal. See *Roberts v. Commonwealth*, Ky., 350 S.W.2d 626 (1961). The circuit court did not err in admitting the photograph of Cane for purposes of identification.

■ Cane's trial counsel was not present when the mug-shot book containing Cane's photograph was shown to Mrs. Oliver on the morning the trial commenced. Conceding that this procedure did not deny him the right to counsel guaranteed by the Sixth Amendment to the United States Constitution, *United States v. Ash*, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973), Cane contends that he was denied right to counsel as guaranteed by Section 11 of the Kentucky Constitution. Kentucky has never specifically considered the application of the decision in the *Ash* case to the right of counsel guaranteed by Section 11 of the Kentucky Constitution. Nevertheless, in *Rolack v. Commonwealth*, Ky., 514 S.W.2d 47 (1974) this state's highest court held that the presence of counsel required at a post-indictment lineup by the decision in *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), did not apply to the examination of photographs for the purpose of identification. The decision in the *Rolack* case is not directly in point because the photographic identification was pre-indictment. Presence of counsel is not required at a pre-indictment lineup. *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); *Ashcraft v. Commonwealth*, Ky., 487 S.W.2d 892 (1972). Assuming that the *Rolack* decision is completely inapplicable, we still conclude that the right of counsel guaranteed by Section 11 of the Kentucky Constitution is no greater than the right of counsel guaranteed by the Sixth Amendment of the United States Constitution as construed in the *Ash* case. The right of counsel does not include the right of the defendant's counsel to be present when witnesses are interviewed by attorneys for the Commonwealth, even though the interview takes place on the morning of trial and includes an examination of photographs for purposes of identification. The right of cross-examination of that witness is sufficient protection for the defendant.

■ The defendant's counsel objected to Mrs. Oliver's identification of Cane, suggesting that the manner in which she was shown Cane's photograph was prejudicially suggestive. The trial court did not conduct an evidentiary hearing on the objection. However, a conference with attorneys did take place in chambers. The record reflects the following discussion took place in chambers following counsel's objection to the manner in which Mrs. Oliver was shown Cane's photograph:

"MR. PREWITT (Commonwealth's Attorney): Unless I'm mistaken she's never seen any Photographs prior to this morning. Perhaps he intended to show her some photos. That's why I wanted to make it clear she picked it out of a large volume of pictures and picked out these two.

She also, I think, the only other time she had any contact with this defendant or the other one was over at police court. She had not been furnished any pictures.

MR. JUDY (Defendant's Counsel): Without being able to see what the random sampling was, the Court has no basis of knowing or basing a decision on whether or not it was an accepteble [sic] random sampling of twenty white females in which there was one black female. It would be highly suggestable (sic) and focused clearly upon this defendant as being the one she should pick out. Without being able to see how it was done and I think it is highly prejudicial to the defendant to allow this witness to testify.

MR. PREWITT (Commonwealth's Attorney): This portion of the book included nothing but black female pictures.

THE COURT: I heard you make that statement to the witness that there were just black females in it, did I not? Am I not right? Did you not state that in front of the jury?

MR. PREWITT (Commonwealth's Attorney): Yes.

THE COURT: That being the case I will overrule the objection."

In light of Mrs. Oliver's inability to identify Cane at the preliminary hearing, there was a substantial question respecting the photographic identification made by her the morning of the trial. The trial court was required to determine not only the admissibility of the out-of-court photographic identification, but also the validity of Mrs. Oliver's in-court identification of the defendant. If it is claimed that a photographic identification was so suggestive that misidentification was likely, that question should be determined by the trial court in a hearing outside of the presence of the jury following the procedures outlined in *Bradley v. Commonwealth*, Ky., 439 S.W.2d 61 (1969) and *Britt v. Commonwealth*, Ky., 512 S.W.2d 496 (1974). A proper record for appellate review exists only if the trial court conducts an evidentiary hearing and makes findings of fact. See *Lee v. Commonwealth*, Ky.App., 547 S.W.2d 792 (1977). If an evidentiary hearing had been requested, the trial court's failure to conduct such a hearing would have been grounds for vacating the judgment and remanding the case for a hearing on the identification procedures followed. *Francis v. Commonwealth*, Ky., 468 S.W.2d 287, 293 (1971).

The defendant's counsel did object to the introduction of the photographs of Cane and Duncan. He also objected to the introduction of the evidence of Mrs. Oliver's identification of Cane from the mug-shot book the morning of the trial. However, there was never any specific request that the trial court conduct an evidentiary hearing out of the presence of the jury at which defendant's counsel could have cross-examined Mrs. Oliver with respect to the out-of-court photographic identification. The defendant's counsel did express concern about the racial composition of the persons in the mug-shot book inasmuch as both Cane and Duncan were black. The attorney for the Commonwealth then assured the court and defendant's counsel that the mug-shots shown Mrs. Oliver were all of black females. The trial court was satisfied by this explanation on the part of the attorney for the Commonwealth and, as far as the record indicates, the defendant's counsel was similarly satisfied. No further inquiry was made or requested into the mug-shots that had been shown Mrs. Oliver.

■ Under RCr 9.22, an attorney making an objection must indicate to the court the action which he desires the court to take or he must object to the action being taken by the court. This rule should be given a broad or liberal construction, rather than a narrow or supertechnical construction. Nevertheless, this court concludes that the record does not contain a request for an evidentiary hearing. Trial counsel are frequently acquainted with each other. They know when they can, and cannot, accept the word of opposing counsel on some question involving the evidence in the case. The defendant's counsel was not required to accept the explanation given by the Commonwealth's attorney with respect to the composition of the mug-shot book. On the other hand, the defendant's counsel was not required to reject that explanation if he had confidence in the word of his fellow attorney.

■ In the absence of a request for an evidentiary hearing the trial court was under no duty to conduct such a hearing. *United States v. Mitchell*, 540 F.2d 1163 (3rd Cir. 1976). The defendant's counsel was clearly aware of the identification issue. The trial court was entitled to rely upon the defendant's counsel to request an evidentiary hearing. Cf. *Phelps Roofing Company v. Johnson*, Ky., 368 S.W.2d 320 (1963). As stated by Chief Justice Burger in *Estelle v. Williams*, 425 U.S. 501, 512, 96 S.Ct. 1691, 1697, 48 L.Ed.2d 126 (1976):

"Under our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during the trial rests with the accused and his attorney. Any other approach would re-write the duties of trial judges and counsel in our legal system."

The trial court did not err in failing to hold an evidentiary hearing on the identification issue, in the absence of a request for such a hearing by the defendant's counsel.

■ Based upon the record before this court, we conclude that the procedures followed in identifying Cane as one of the three robbers were not unduly suggestive. This court has examined the two photographs of Cane and Duncan taken at the time of their arrest showing them in female attire. In the photographs, both Duncan and Cane give the appearance of being females. There is nothing which would cause a person to select Cane and Duncan's photographs from a book of female mug-shots solely on the basis that the persons to be identified were male. The two store clerks, the store customer and the arresting officer were all led to believe that they were dealing with females. Under the unusual circumstances of this case, fairness dictated that Cane's photograph while attired as a female should be included in a set of female photographs for purposes of identification. There was no error in the identification procedures followed.

■ Cane argues that the trial court committed reversible error by permitting the Commonwealth's attorney to question him concerning a prior conviction without first holding a hearing in chambers outside of the presence of the jury as required by *Cotton v. Commonwealth*, Ky., 454 S.W.2d 698 (1970). The record fails to establish that a *Cotton* hearing was in fact held. During the pendency of this appeal, the Commonwealth has filed a "motion to supplement record" which attempts to introduce into the record the affidavit of the trial attorney for the Commonwealth that, in fact, a *Cotton* hearing was held. RCr 12.60 provides:

"It is not necessary for the record on appeal to be approved by the trial court or judge thereof except as provided in Rules 12.68 and 12.72 but if any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by that court and the record made to conform to the truth. If any thing material to either party is omitted from the record on appeal by error or accident or is misstated therein, the parties by stipulation, or the trial court, either before or after the record is transmitted to the appellate court, or the appellate court on a proper suggestion or its own initiative, may direct that the omission or misstatement shall be corrected, and if necessary that a supplemental record shall be certified and transmitted by the clerk of the circuit court. All other questions as to the content and form of the record shall be presented to the appellate court."

In response to the Commonwealth's motion to supplement the record, Cane's appellate counsel continued to assert that no *Cotton* hearing was held. RCr 12.60 does permit an appellate court to correct an omission in the record "on a proper suggestion or its own initiative." However, this portion of the rule assumes that the appellate court is in a position to make an intelligent determination that the material in question was in fact omitted from the record of what transpired before the trial court. In the present case, this court has no way to determine whether a *Cotton* hearing was held. The trial judge is the only person in a position to settle the question. If the Commonwealth desired to supplement the record to show that a *Cotton* hearing was in fact conducted, the matter should have been submitted to the trial court as permitted by RCr 12.60. The Commonwealth's motion to supplement the record is denied.

■ Nevertheless, it does not follow that the trial court committed reversible error by failing to conduct a *Cotton* hearing. There was no objection of any kind to the Commonwealth's cross-examination of Cane respecting his prior record. Nor was there any objection to the trial court's admonition that the jury consider Cane's prior felony conviction solely on the issue of credibility. Consequently any objection to the trial court's failure to conduct a *Cotton* hearing was waived.

■ Cane objects to the trial court's failure to give an instruction on the pre-

sumption of innocence. Kentucky has long held that it is not necessary to give an instruction on the presumption of innocence when the trial court has given the usual instructions on reasonable doubt. E. g. *Johnson v. Commonwealth*, 297 Ky. 760, 181 S.W.2d 262 (1944). The rule was recently reaffirmed by this court in *Taylor v. Commonwealth*, Ky.App., 551 S.W.2d 813 (decided April 1, 1977). We believe the Kentucky rule to be realistic and sound. See *McCormick on Evidence* § 310, at 648 (1st ed. 1954). The presumption of innocence would most appropriately be mentioned by the court or counsel at the commencement of the trial before the introduction of any evidence of the defendant's guilt.

■ As his last ground for reversal, Cane asserts that the attorney for the Commonwealth engaged in improper conduct during the course of the trial and in closing argument. In seeking to impeach Duncan's testimony which attempted to exonerate Cane, the attorney for the Commonwealth first inquired whether Cane and Duncan were cellmates in the county jail awaiting trial. When Duncan answered that they were not cellmates, but had shared the same cell block, the attorney for the Commonwealth next asked: "Well, you all are intimate friends?" The attorney for the Commonwealth was entitled to impeach Duncan's testimony by showing bias. There was nothing improper in asking whether Cane and Duncan "were intimate friends." The trial court did not err in overruling the objection to the question. The question was not grounds for declaring a mistrial. Cane also objects to one statement in closing argument. This court finds the statement to be no more than fair comment on the evidence. Furthermore, any impropriety in the closing argument was waived by failure to make a timely objection. *Hopper v. Commonwealth*, Ky., 516 S.W.2d 855 (1974).

For the foregoing reasons, the judgment of the circuit court is affirmed.

All concur.