RENDERED: JANUARY 6, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1504-MR

ALLISON BAILEY AND
HAYLEE VANCE                                                     APPELLANTS

                         APPEAL FROM ESTILL CIRCUIT COURT
v.                       HONORABLE MICHAEL DEAN, JUDGE
                         ACTION NO. 17-CI-00102

JESSICA MORRIS                                                     APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, JONES, AND McNEILL, JUDGES.

CETRULO, JUDGE: The Appellants, Allison Bailey and Haylee Vance ("Bailey & Vance"), appeal from the denial by the Estill Circuit Court of their motion for a new trial due to improper remarks made by opposing counsel during closing statements. After review, we affirm.

# I. FACTS AND BACKGROUND

In March 2017, Bailey & Vance were passengers in a Dodge Caravan being driven by Appellee, Jessica Morris ("Morris"), when a collision occurred. A truck driven by the now-deceased Kenneth Calhoun crossed over the double-yellow center line into the path of the Dodge Caravan traveling in the opposite direction. Morris later testified that she saw the truck cross into her lane, but was unable to avoid a sideswipe collision. After the initial impact with the truck, Morris was unable to maintain control of the Dodge Caravan and struck a Buick Lacrosse head-on. All parties suffered severe injuries.

After years of legal proceedings and various settlements, Bailey & Vance continued to trial in October 2021. Bailey & Vance alleged that Morris was negligent in her operation of the Dodge Caravan and failed to take reasonable actions to avoid or mitigate the collisions. More specifically, Bailey & Vance alleged that Morris did not brake nor move to the right because she was most likely distracted by her cell phone, and therefore bore some of the fault. However, Morris argued that she *did* brake and move to the right prior to the initial collision. Despite Bailey & Vance's argument hinging on Morris's cell phone use, the parties stipulated – and filed that stipulation with the court – that "neither Party shall

either discuss or offer cellular phone records as evidence herein."[1] However, throughout the trial, both sides asked witnesses and experts questions relating to Morris's cell phone use prior to the collision. No objection related to the stipulation was made until the closing arguments. During closing arguments, Morris's legal counsel stated:

> We've heard all sorts of testimony about [Morris] accessing her phone during the ride from Jabez, Kentucky. [Morris] said she wasn't using her phone at the time of the accident. At the time of the accident Allison had turned from the front seat to the back and was talking to Haylee. That's why none of them saw what was going on on the road. And yet, they tell you she was using her cell phone. There's been no forensic expert witness that's come forward to testify that the cell phone was in use at the time of the accident. Why is that?

After Morris's legal counsel stated those words, Bailey & Vance objected and asked for a bench conference. The audio-only record is at times difficult to understand but is sufficient for our analysis.

Bailey & Vance Counsel:  We have a stipulation on this that we submitted. Remember you told us to put them in writing, and we did.

[. . . inaudible in part[2]]

---

[1] Bailey & Vance argued that the cell phone records themselves were highly technical and would require an expert to introduce them, "which neither party had."

[2] We take notice that at some point in the bench conversation, Bailey & Vance Counsel is heard stating "mistrial," but the rest of the sentence is inaudible. We presume the request for a mistrial based on the rest of the conversation and the subsequent pleadings.

| | |
|---|---|
| Morris Counsel: | Our stipulation was that we weren't going to comment about the particular cell phone records. |

. . .

| | |
|---|---|
| Judge: | If it wasn't introduced into evidence how can comment on it in closing? |
| Morris Counsel: | Excuse me? |
| Judge: | It wasn't introduced into evidence, was it? |
| Unknown: | No. |
| Judge: | Then you can't comment on it. |
| Morris Counsel: | I said there was an *absence* of proof. |
| Judge: | No, you can't comment on it. |
| Morris Counsel | Ok, [Bailey & Vance's expert] talked about that during his testimony.  He said there was no forensic proof . . . a question about that. |

[inaudible]

| | |
|---|---|
| Judge: | I'm going to sustain the objection. |
| Morris Counsel: | Alright. |
| Bailey & Vance Counsel: | Judge, will you admonish the jury, please? |
| Judge: | No, I'm not going to do that. |

With no admonition, the closing arguments continued.  After deliberation, the jury awarded Haylee Vance $1,050,000 and Allison Bailey $215,000 in damages; however, the jury assigned no fault to Morris.  The jury assigned 90% of the fault to the driver of the truck who initially crossed the center

-4-

line and 10% fault to each passenger, Bailey & Vance, presumably for failing to correctly wear their seatbelts.

After the jury verdict, Bailey & Vance filed a motion to alter, amend, or vacate the judgment, or alternatively motion for a new trial. Bailey & Vance argued that counsel for Morris violated the written stipulation and poisoned the jury. The trial court denied the motion. This appeal resulted.

## II.     STANDARD OF REVIEW

The Order denying the motion to alter, amend, or vacate the judgment pursuant to Kentucky Rule of Civil Procedure ("CR") 59.05[3] is interlocutory and non-appealable. *Ford v. Ford*, 578 S.W.3d 356, 365-66 (Ky. App. 2019) (internal quotation marks and citations omitted) ("When a trial court *denies* a CR 59.05 motion, and a party erroneously designates that order in his or her notice of appeal, we utilize a substantial compliance analysis and consider the appeal properly taken from the final *judgment that was the subject of the CR 59.05 motion*."). Similarly, an order denying a motion for a new trial pursuant to CR 59.01 is not a final order and is not appealable as such. *Hardin v. Waddell*, 316 S.W.2d 367, 368 (Ky. 1958). However, we *may* review the trial court's final judgment, *i.e.*, the trial

---

[3] Bailey & Vance's motion states it was pursuant to CR 50.01, but that is a motion for a directed verdict, which is not consistent with their argument. Consistent with the motion's header and argument, we will treat it as pursuant to 1) CR 59.05, a motion to alter, amend, or vacate a judgment, and 2) CR 59.01(a) which states grounds for a new trial including an irregularity in the proceedings of the court, or an order of the court, or abuse of discretion, by which the party was prevented from having a fair trial.

court's decision to overrule the motion for a new trial during the bench conference. *Ford*, 578 S.W.3d at 366. *See also Embry v. Turner*, 185 S.W.3d 209, 213 (Ky. App. 2006).

> As a general rule, the decision of a trial court to overrule a motion for new trial will not be disturbed on appeal absent a manifest error or abuse of discretion. In undertaking our analysis of the trial judge's eventual decision not to allow a new trial here, we must be mindful that the decision is presumptively correct, and that we cannot reverse unless it was clearly erroneous.

*Id*. (internal quotation marks and citations omitted).

Additionally, the proper standard for review of evidentiary rulings is abuse of discretion. *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky. 2000). As such, we review the failure of the trial court to provide relief – after sustaining the objection of Bailey & Vance to the stipulation violation – under the same standard of review as the final judgment.

"The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair or unsupported by sound legal principles." *Id*. at 581 (citing *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

### III.   ANALYSIS

On appeal, Bailey & Vance argue that the trial court committed reversible error when it failed to provide a curative remedy – an admonition or mistrial – after sustaining their objection to opposing counsel's stipulation

-6-

violation during closing arguments. Conversely, Morris argues that even if the trial court erred by failing to admonish the jury, that error does not rise to the level of abuse of discretion warranting a mistrial.

Generally, written stipulations "are of two classes: One relating to evidence, *i.e.*, consisting of an agreed statement of fact, and the other relating to procedure." *World Fire & Marine Ins. Co. v. Tapp*, 151 S.W.2d 428, 430 (Ky. 1941). Here, it relates to procedure, with the apparent intent – according to Bailey & Vance – to increase "trial efficiency, order and fairness." Although Morris briefly attempts to argue that she did not *technically* violate the stipulation – because counsel did not expressly say "cell phone data" – we are not convinced.

The parties stipulated that they would not "discuss or offer cellular phone records as evidence herein." However, closing arguments of Morris included ". . . they tell you she was using her cell phone. There's been no forensic expert witness that's come forward to testify that the cell phone was in use at the time of the accident." That statement appears to be a violation of the stipulation, although it was not a carefully worded stipulation. The parties could have easily included in their agreement that all counsel were precluded from commenting upon the absence of that evidence. They did not. Counsel for Morris responded to the objection by stating essentially that, *i.e.*, the comment was upon the absence of cell phone records or evidence presented by the plaintiff appellants who bore the

burden of proof at trial. Still, our focus is on the *effect* of the improper closing argument on the jury. Attorneys are allowed great latitude in their closing arguments. They may draw reasonable inferences from the evidence and propound their explanations of the evidence and why the evidence supports their respective theories of the case. "However, they may not argue facts that are not in evidence or reasonably inferable from the evidence." *Garrett v. Commonwealth*, 48 S.W.3d 6, 16 (Ky. 2001) (internal quotation marks and citations omitted).

Admonitions can be easy cures to erroneous arguments or admissions of evidence. *See Graves v. Commonwealth*, 17 S.W.3d 858, 865 (Ky. 2000).[4] *See also Jacobsen v. Commonwealth*, 376 S.W.3d 600, 610 (Ky. 2012). Admonitions are usually sufficient, and there is a presumption that the jury will heed such an admonition. *Matthews v. Commonwealth*, 163 S.W.3d 11, 17 (Ky. 2005) (citations omitted). "An admonition to the jury to disregard an improper argument cures the error unless it appears the argument was so prejudicial, under the circumstances of the case, that an admonition could not cure it." *Jefferson v. Eggemeyer*, 516 S.W.3d 325, 338 (Ky. 2017) (citing *Price v. Commonwealth*, 59 S.W.3d 878, 881 (Ky. 2001)).

---

[4] Much of our caselaw regarding admonitions is rooted in criminal law, but we find the precedent to be guiding and helpful in this civil matter.

The trial court did not offer the requested relief, although it did sustain the objection of Vance & Bailey. While we believe an admonition would have been a reasonable remedy to cure the improper closing argument comment, that failure does not warrant a mistrial under these circumstances.

This Court has explained that

> [e]ven if an argument is improper . . . the question remains whether the probability of real prejudice is sufficient to warrant a reversal. In making this determination, each case must be judged on its unique facts. An isolated instance of improper argument, for example, is seldom deemed prejudicial.

*Rockwell Int'l Corp. v. Wilhite*, 143 S.W.3d 604, 631 (Ky. App. 2003) (citations omitted).

During the trial, both parties spent considerable time – through expert and witness testimony – arguing *around* the issue of Morris's cell phone use. Was she using her phone to switch songs just before the collision? Was she texting her mother about their evening plans? Or was she still eating her Wendy's? "[I]t is the presence of real and tangible prejudice that creates the need for a mistrial." *Commonwealth v. Padgett*, 563 S.W.3d 639, 647 (Ky. 2018). It is not likely that this one comment – hinting to the absence of evidence in the form of cell phone data – was significantly prejudicial considering the extent of the cell phone-related conversation throughout the two-day trial.

Additionally, the use or non-use of Morris's cell phone did not change the underlying fault established by testimony: 1) Kenneth Calhoun's truck crossed the center line and caused the accident, and 2) Vance & Bailey were not correctly wearing their seatbelts, which likely exacerbated their injuries.

> A trial court only declares a mistrial if a harmful event is of such magnitude that a litigant would be denied a fair and impartial trial and the prejudicial effect could be removed in no other way. Stated differently, the court must find a manifest, urgent, or real necessity for a mistrial. The trial court has broad discretion in determining when such a necessity exists because the trial judge is best situated intelligently to make such a decision.

*Matthews v. Commonwealth*, 163 S.W.3d 11, 17 (Ky. 2005) (internal quotation marks and citations omitted).

Understanding that the trial court is best situated to assess the effect of the improper remarks, we give the trial court its due discretion. The violation of the stipulation was not sufficiently prejudicial to deny a fair trial. The trial court acted within its discretion in concluding that an admonition could have brought more attention of the missing data to the jury. It was clear from the evidence that Kenneth Calhoun caused the accident, and the jury believed Vance & Bailey bore some responsibility for their own injuries. Here, one improper statement made in closing arguments did not necessitate a new trial.

## IV.  CONCLUSION

We are not persuaded that the trial court abused its discretion by deciding against a mistrial.  The closing argument of Morris included an improper remark, but it was isolated and was not inflammatory in the context of the two days of evidence.  Accordingly, we AFFIRM the Judgment of the Estill Circuit Court.

MCNEILL, JUDGE, CONCURS.

JONES, JUDGE, DISSENTS AND FILES SEPARATE OPINION.

JONES, JUDGE, DISSENTING:  Respectfully, I dissent.  I would vacate the judgment in favor of the Appellee and remand for a new trial.

As noted in the majority Opinion, the Appellants had obtained cell phone records but planned not to introduce them at trial because they were highly technical and would have likely required expert testimony by both parties for the jury to have made sense of them.  During the pretrial proceedings, the parties reached an agreed stipulation that neither party would "discuss or offer cellular phone records as evidence herein."  The parties, however, did not agree that they would not present any evidence regarding whether the Appellee was using her cell phone at the time of the accident.  In fact, the central theory of Appellants' negligence case against the Appellee was that, because Appellee was using her cell phone immediately prior to the accident, she was distracted and did not take

-11-

reasonable steps to avoid further collision after the Nissan crossed over the center line.

At trial, whether Appellee was using or was distracted by her cell at the time the Nissan crossed over the centerline was an issue of contention. During closing arguments, in direct contravention of the parties' agreed stipulation not to mention the cell phone records, Appellee's counsel suggested to the jury that they should perhaps infer that Appellants would have produced the cell phone records had Appellee in fact been using her phone. Even though the trial court agreed with Appellants that this reference violated the parties' stipulation and sustained the objection on that basis, it refused to either declare a mistrial or give an admonition as requested by Appellants.

Given that the improper argument went to the Appellants' central theory of the case, and the nature of the closing argument, which planted in the jury's mind that Appellants would have produced the cell phone records if the records, in fact, supported Appellants' theory of the case, I cannot agree that the trial court's failure to give an admonition in this case was not prejudicial. *Matters v. Commonwealth*, 245 S.W.2d 913, 914 (Ky. 1952).

In fact, I am convinced that, in determining whether the Appellee was using her cell phone or not, the jury may have very well focused on the absence of the cell phone records as somewhat dispositive. It seems that modern-day jurors

have come to equate the failure to produce certain scientific evidence with its non-existence; this is often known as the "CSI or tech effect." Michael Johnson, *The "CSI Effect": TV Crime Dramas' Impact on Justice*, 15 CARDOZO PUB. L. POL'Y & ETHICS J. 385, 396 (2017).

Accordingly, I would vacate the judgment and remand for a new trial.


BRIEFS FOR APPELLANTS:

Daniel Frederick
West Liberty, Kentucky

BRIEF FOR APPELLEE:

John G. Irvin, Jr.
Lexington, Kentucky