James W. ILES, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Feb. 4, 1972.

Carl Howell, Jr., Howell & Howell, Hodgenville, for appellant.

John Breckinridge, Atty. Gen., David E. Murrell, Asst. Atty. Gen., Frankfort, for appellee.

CULLEN, Commissioner.

James W. Iles appeals from a judgment which sentenced him to five years' imprisonment pursuant to a verdict convicting him of the offense of operating a motor vehicle without the owner's consent, KRS 433.220. The penalty was the maximum under the statute. Iles' primary claims of error relate to his being questioned concerning prior convictions and imprisonments, and the admission of evidence obtained by the police following his allegedly invalid arrest. We shall consider first the claim of improper questioning with reference to prior convictions and imprisonments.

On the day of the trial, prior to the beginning of the selection of the jury, Iles moved for a pre-trial hearing "in order to determine the admissibility of any questions that may be asked of the defendant by the Commonwealth relating to prior convictions which, if asked, would be prejudicial to the defendant." The motion cited Cotton v. Commonwealth, Ky., 454 S. W.2d 698. Despite the clear direction of *Cotton* that such a hearing be held, the circuit court overruled the motion, and the trial was commenced.

After the close of the Commonwealth's case, Iles took the stand to testify in his own defense and on direct examination, when asked where his home was, he replied that he had resided in Indianapolis the last seven years. (The car in question was stolen in Hodgenville, Kentucky, and Iles was found with it in Byrdstown, Tennessee.) On cross examination, he was asked: "Where did you live for 360 days beginning June 2, 1966 in Indianapolis?" He answered that he was in the Indiana State Reformatory. His counsel then objected and asked for a hearing, in chambers, which was granted. At the hearing, Iles' counsel stated that Iles had been convicted only once of a felony, in 1960. He asked that no questions be permitted as to misdemeanor convictions, and argued that the 1960 conviction should not be brought out because of its remoteness in time, because Iles was a minor when it was committed, and because its admission would be prejudicial by reason of it having been for a similar offense. Counsel also stated his intention to move that the question and an-

swer respecting the 1966 imprisonment be stricken. The trial judge ruled that the Commonwealth "has the right under the Cotton case to ask the questions, subject, of course to my admonition as to the credibility," and when asked by Iles' counsel whether the questioning would be confined to felonies the judge said: "He may ask him. He has the right to answer. If it wasn't a previous felony, I presume he will answer it wasn't."

The trial then resumed and the cross-examination was continued. The prosecutor, referring to the 1966 imprisonment, asked "what the charge was that you were convicted on," and Iles replied that it was "operating a motor vehicle without larceny." The prosecutor then asked Iles whether he had been convicted of a felony of grand larceny in Champaign, Illinois, in 1954, to which Iles replied, "No, sir." The prosecutor next asked Iles whether he was "ever in the penitentiary at Urbana, Illinois." Iles said "No" but that he was in the penitentiary at Joliet, Illinois, and when asked what was the charge he replied that it was larceny of an automobile. He then was asked whether he was "ever in the pen at Pontiac, Illinois" and "were you ever at a pen or state penal farm in Green Castle, Indiana," to both of which questions he answered "Yes." Upon being asked what the latter imprisonment was for he said it was "operating a motor vehicle without larceny."

■ The foregoing questioning was contrary both to the letter and the spirit of the rule of Cotton. The purpose of allowing questioning as to prior felony convictions is to impeach the credibility of the defendant as a witness, not to identify him as an habitual violator of the law. Cotton holds that after an in-chambers determination of admissibility by reason of relevancy to the issue of credibility, and subject to limitation by the trial court, in a limited discretion, to protect the defendant against undue prejudice, the defendant-witness may be asked on cross-examination if he

has been convicted of specific offenses relevant to the issue of credibility. If he answers in the affirmative, that is the end of it. If he denies the convictions, proper documentary proof of them may be introduced, controlled by the sound discretion of the judge.

In the instant case the prior offenses concerning which Iles was questioned (car theft) were relevant to the issue of credibility. But in no other respect did the questioning conform to Cotton. The questions, with one exception, were not confined to offenses identified as felonies. The initial inquiries, again with one exception, were as to imprisonment rather than conviction. There was no limitation by the trial court of the number of previous offenses brought out, despite the fact that all of the previous offenses were of the same type for which Iles was currently on trial, which fact is stated in Cotton to be a particular reason for limiting the scope of the questioning. The questions were initiated without a prior in-chambers hearing, which Iles had requested at the outset of the trial.

The obvious impact of the questioning was to brand Iles as a chronic car thief, rather than to impeach his credibility. (His testimony was pretty much incredible on its face and did not require much in the way of impeachment.) While the evidence of Iles' guilt was strong, the jury imposed the maximum penalty, so we cannot say that the error in the questioning was not prejudicial. And as pointed out in Cowan v. Commonwealth, Ky., 407 S.W.2d 695, the giving of the standard admonition by the trial court could not effectively eliminate the prejudice.

■ We find no merit in the Commonwealth's argument that when Iles said on direct examination that he had lived in Indianapolis for seven years he "opened the door" for unlimited questioning as to how much time he had spent in various penal institutions. Iles' statement as to the period of time he had lived in Indianapolis was

not of any major relevance, so there was no justification for undertaking to refute it (or actually only to qualify it) by highly prejudicial evidence of imprisonments for previous offenses.

The improper and prejudicial treatment of the matter of previous offenses continued at later stages in the trial. Near the end of the cross-examination the Commonwealth's attorney asked Iles: "With all the experience you have had, having spent 360 days in a penal farm with reference to car theft, you were familiar with all your rights, weren't you? And when Iles answered, "Yes," he was asked, "And you had been warned of your rights many times, hadn't you?" Later, on recross-examination, Iles was asked "if in the year 1960, you were convicted of a felony charging auto theft in Illinois?", to which Iles answered, "Yes." Thereafter, in rebuttal, the Commonwealth put on a detective who had talked with Iles after his arrest. The detective was asked whether Iles had volunteered the information that he had been convicted of grand larceny in Champaign, Illinois, in 1954, had "committed a felony in 1958, in Champaign, Illinois," had "committed or was convicted of auto theft in 1960 in Chicago, Illinois," and "was convicted of auto theft in 1963 in Indianapolis." All of this was improper, for the reasons hereinbefore stated and because some of the alleged convictions he had admitted on cross-examination.

It is our conclusion that the judgment must be reversed for the error hereinbefore discussed.

The appellant's second major allegation of error requires discussion because it involves questions that probably will occur again on a new trial. This relates to the validity of his arrest and the admissibility of evidence obtained by the police following the arrest.

 The car which Iles was charged with stealing was a 1963 Chevrolet belonging to Claude Kennedy of Hodgenville,

Kentucky. On the night before his arrest, Iles was driving that car near Byrdstown, Tennessee, and struck an abutment, causing a flat tire and damaging the front end. He managed to drive the car into town and parked it on the public square, after which he tried to make a phone call. On that occasion he was seen with the car by State Trooper Crisp and had some conversation about the car problem with State Trooper Beatty. The next morning Iles headed out of town on foot, after having spent the night sleeping in the car. Early in the afternoon he was arrested by State Troopers Crisp and Beatty, on a charge of stealing *a different car*. The grounds for that arrest, as stated by Trooper Crisp, were:

"Well, Trooper Beatty and myself, we were patrolling the roads in Pickett County, and we got a report on Dr. Billy Copeland's car being stolen in Byrdstown, stolen at Bloomington Church and found abandoned at the car wash in Bard County, and Mr. Iles was seen walking from the car wash back down into Byrdstown. Then when I got checking around somebody told us that they thought that might be him, the one that had stolen the car and we picked him up for investigation."

Under Whitely v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306, the arrest, based on nothing more than the tip of one or more unidentified informers, lacked probable cause and was invalid; therefore, any evidence secured *as an incident to* the arrest was not admissible. The question for our consideration is whether the evidence of which Iles complains was obtained as an incident to the invalid arrest.

Following the arrest Troopers Crisp and Beatty went with Iles to the place where the Chevrolet was parked. The car bore an Indiana license plate, the number on which the officers copied down. They also opened the car door, with keys which Iles gave them on their request, and copied down the vehicle identification number on the door post. They then called police

headquarters, reported the numbers, and were told that both the license plate and the car were stolen items. The officers then searched the car and found the Kentucky license plate for the car in the trunk. They then took Iles to jail and before locking him up they searched his person and took from him a number of car keys, which subsequently were introduced on the trial.

Iles argues that the *search* of the car was incident to the arrest and therefore any evidence produced by the search was not admissible. We think the argument is not valid because, first, the basis for the search was not the arrest, but was the report from police headquarters that the Indiana license plate and the car both were stolen items; and, second, Iles has no standing to complain of the search because, the car being a stolen one, he had no ownership or possessory right in it. See Commonwealth v. Johnson, Ky., 420 S.W.2d 103.

Iles perhaps could argue that the officers' going with Iles to the place where the car was parked, by reason of which they were enabled to make the observations which led to the discovery that the car was a stolen one, was incident to the arrest, wherefore any evidence at all that the car was stolen should be precluded. We need not decide whether under another factual situation the argument would have validity; it is sufficient to say that we find no validity in it as applied to the facts of the instant case. Both of the troopers had seen Iles with the car the night before; and they either knew where it was or would have had no difficulty in locating it in its disabled condition. Their locating the car and identifying it as a stolen one were not dependent upon Iles' being arrested. The discovery and identification of the car were merely *incidental* to the arrest, in the sense of being *casual,* rather than *incident* to it in a *causal* sense.

Iles maintains that the keys found on his person should not have been admitted in evidence because they were taken by a search incident to the invalid arrest. Iles' testimony was that he was searched immediately prior to being placed in jail, which was after the discovery that the Chevrolet was a stolen car. At that time the officers had probable cause to arrest him for stealing the Chevrolet. Therefore, under Johnson v. Commonwealth, Ky., 443 S.W.2d 20, the search of Iles' person was justified on probable cause that he was guilty of stealing the Chevrolet, without regard to the validity of the arrest which had been made on another charge.

Iles makes a general charge that on the whole case his substantial rights were prejudiced, but this charge does not involve anything of substance other than the matters hereinbefore discussed.

The circuit court entered an order that Iles' counsel be allowed $500, to be paid out of the State Treasury, for his services as appointed counsel for the indigent defendant. The counsel asks that this court approve the allowance and certify it to the State Treasurer for payment. Neither party appealed from the order, so procedurally this matter is not properly before us, and therefore we do not rule in the matter.

The judgment of conviction is reversed with directions for further proceedings in conformity with this opinion.

All concur.