Steve KELLER, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

Feb. 21, 1978.

As Modified April 11, 1978.

Terrence R. Fitzgerald, Deputy Public Defender, Daniel T. Goyette, Associate Director, Jefferson District Public Defender, Louisville, for appellant.

Robert F. Stephens, Atty. Gen., J. Gerald Henry, Asst. Atty. Gen., Frankfort, for appellee.

STEPHENSON, Justice.

Steve Keller was convicted for armed robbery, KRS 433.140, (committed in 1974, before the enactment of the Penal Code) and sentenced to life imprisonment in the penitentiary.

Keller and Tommy Howard were indicted in 1974 for the armed robbery of a service

station, the Bonded Oil Company. Keller entered a plea of guilty pursuant to an agreement that the Commonwealth would recommend a ten-year sentence and that he take a lie detector test. According to the agreement, if the results of the test demonstrated that Keller was innocent of the charge, the plea of guilty would be set aside and the charges would be dismissed. The results of the test showed that Keller was not telling the truth when he denied a role in the armed robbery, and he was sentenced to ten years in the penitentiary.

In 1975, Keller filed a motion to vacate the judgment. The substance of the motion was that one William Butler, a fellow inmate of the prison, was the perpetrator of the armed robbery and was willing to testify to that fact and, further, would testify that Keller was not involved in the crime. Subsequently, Butler testified in a hearing that he and Howard committed the armed robbery and that Keller was innocent. The judgment of conviction was vacated. In March 1977, Keller and Howard were put on trial for the charge of armed robbery, resulting in Keller's conviction. The jury could not agree as to Howard.

The manager of the Bonded Oil Company and an employee both identified Keller as the person who pointed a pistol at them and robbed them inside the service station. Howard was identified by one of the witnesses as the driver of the automobile in which Keller fled the scene.

Keller did not testify in his own behalf, but introduced Butler who testified that he robbed the manager and employee of the Bonded Oil Company and described the circumstances of the robbery substantially the same as described by the manager and employee of the service station. He testified that Keller was not present and did not commit the armed robbery.

On cross-examination Butler testified that upon hearing from Keller the charge on which he was imprisoned he informed Keller that he was the one who had committed the armed robbery. Butler further testified that, "He [Keller] said he would help me get out and get me some money and help me get a lawyer to get me out," if Butler would testify for him at trial. Although they talked to each other regularly, Butler denied that he and Keller discussed the details of the armed robbery while in prison.

On direct-examination, Keller established that Butler had been convicted of a felony with the usual admonition by the trial court. *Cotton v. Commonwealth,* Ky., 454 S.W.2d 698 (1970). The Commonwealth was permitted by the trial court to prove on cross-examination that Butler was in prison for armed robbery. At the same time the Commonwealth received permission to show the length of sentence being served by Butler, Keller requested and received permission to show the date Butler would be eligible for parole. The Commonwealth recalled an employee of the service station, who testified that Butler was not the person who committed the robbery.

After the case was argued, the instructions directed that upon a finding of guilty the jury was to impose a sentence of "ten years or life." Five minutes after the jury retired to deliberate, the trial court recalled the jury and corrected the penalty provision of the instructions verbally by informing the jury that the instructions were amended to say "not less than 10 years or life," and this correction was inserted in writing in the instructions. The jury then retired to deliberate with proper instructions and returned a verdict of guilty, fixing the punishment at life imprisonment.

Keller asserts as error the ruling of the trial court that permitted the Commonwealth to show that Butler was serving a life sentence and further asserts that he was then compelled to show the date Butler would become eligible for parole, which Keller asserts created a substantial risk of improper penalty assessment and thereby denied Keller a fair trial.

Prior to the cross-examination of Butler by the Commonwealth, this colloquy took place out of the hearing of the jury:

"MR. STREPEY (the prosecutor): May we approach the Bench?

[Whereupon the following proceedings were had at the Bench in whispered tones.]

"MR. STREPEY: I'm going to advise the Court and Co-counsel for impeachment purposes I intended to ask, one, specifically what he is in Eddyville for; and I expect the answer to be armed robbery. And two, I'm going to ask him the length of the sentence which is a life sentence.

"I think that goes to the motive for him coming to testify. And since he's not a defendant on trial, I believe I'm entitled to ask him that question.

"COURT: I think you are. Is that all?

"MR. FRITZ (appellant's [Keller's] counsel): To avoid misleading the jury on the life sentence, there has been previous testimony indicating that his first eligibility for parole being 1981, means indeed his knowledge complicity would not—he has nothing to lose. He has plenty to lose because his parole date could be moved back. So I'm suggesting to the Court that if we allow him the testimony concerning his length of present sentence he is serving, that the jury should be allowed to understand that he will have a certain date eligibility for parole.

"COURT: Frankly, on the last point, if you all agree on this there's no problem.

"MR. TURNER (co-defendant's [Howard's] counsel): I didn't hear it.

"COURT: Mr. Strepey is asking the Court's permission to ask the Defendant's term of his sentence.

"Mr. Fritz is asking that if that be done the Defendant should be allowed to testify as to his parole date.

"Now, if that can be done without objection  .   . ..

"MR. TURNER: I have a couple of questions I want to ask first.

"COURT: He is asking about the life sentence to establish a motive.

"MR. TURNER: I have no objection to that."

Then, during the course of the cross-examination, Butler was asked:

"BY MR. STREPEY:

"Q Mr. Butler, you were previously asked if you had been convicted of a felony and you answered yes. Would you tell us what that felony is?

"A Armed robbery.

"Q And what type of sentence are you serving?

"A Double life.

"Q This question is by agreement of all counsel and is on the record. When will you first become eligible for parole?

"A 1981."

Keller attempts to counter the argument of the Commonwealth that there was no objection to this line of questioning by arguing that he had no opportunity to object. It is clear from the proceedings at the bench that Keller had an opportunity to object and did not do so, thus not preserving the question for review. Nevertheless, we feel the question deserves some discussion.

■ As a general proposition, we are of the opinion that it is well settled that a witness may be cross-examined on any facts which tend to show bias, interest, or motive which might affect the credibility of the testimony of the witness. This is so for the reason that the jury is entitled to hear all the relevant facts calculated to influence a witness so as to enable the jury to properly estimate the weight to be given the testimony of the witness.

We have no hesitancy in saying that had Butler been serving a sentence of life without parole or had been under sentence of death, then it would be a relevant showing that Butler has "nothing to lose," or more properly that this fact could be taken into account by the jury in evaluating the credibility of Butler's testimony in that such evidence would tend to show the testimony would be less reliable than similar testimony from a witness not in such circumstances.

■ As we see it, this testimony as to the length of Butler's prison sentence should not have been admitted for the reason that it precipitated the testimony as to

**160**

eligibility for parole. We have held that the procedural rule of evidence that permits proof of a felony conviction for the purpose of impeachment (CR 43.07; RCr 13.04) does not permit the showing of the length of sentence for the reason that for the purpose of the rule of evidence such a showing is prejudicial. *Cowan v. Commonwealth,* Ky., 407 S.W.2d 695 (1966). For this purpose, as demonstrated by the limiting admonition given by the trial court, the length of sentence is not relevant.

But for the fact that the parole system exists, we can see how serving a life sentence would tend to influence a jury to believe that Butler had nothing to lose by perjury or by the risk of conviction of the crime.

It is a fact, however, that many prisoners are paroled and serve only a nominal portion of the sentence of imprisonment. This leads us to the relevancy of proof of *eligibility* for parole. We do not find a case in this jurisdiction or any other that has approved testimony showing the date of *eligibility* for parole. The rules and regulations of the parole board and the factors taken into account by the parole board for release on parole, including the conduct of the prisoner, are not before the jury and as a practical matter cannot be. For this reason, we are of the opinion that this testimony also should have been excluded from the jury. Interestingly enough, the Commonwealth did not develop on cross-examination the reason for the introduction of the evidence on cross-examination to establish motive for Butler's testimony. We do not see that this motive would be self-evident to the jury. We can see a bemused jury hearing that Butler was serving a double life sentence for armed robbery and he would be eligible for parole in 1981, having no idea how it was to consider the evidence other than the brief references to such evidence in both closing arguments.

■ In the circumstances of this case, we are of the further opinion that the evidence of eligibility for parole cancelled out the evidence of length of sentence and that Keller was not unfairly prejudiced.

The prejudicial and relevant evidence developed on cross-examination touching on Butler's credibility was the agreement between Butler and Keller and the further admission by Butler that he told the Commonwealth's attorney the day before that he did not intend to testify in the trial at all because he had not been paid any money.

■ As to the assertion of error in the correction of the instructions by the trial court, we see nothing in the record to demonstrate that the jury did not fully understand the correction, particularly in view of the fact that only five minutes elapsed between the time the jury was sent to the jury room and was recalled for the purpose of correcting the instructions.

The judgment is affirmed.

All concur.